**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **NATIONWIDE PROPERTY AND CASUALTY INSURANCE COMPANY** and **NATIONWIDE MUTUAL FIRE INSURANCE COMPANY**, Plaintiffs, | ) ) ) ) **2:14-cv-735** ) |
| v. | ) ) |
| **RANDY SHEARER, ERIN SHEARER**, *husband and wife*, **WALTER G. FOX** *(deceased)*, **ROSEMARY FOX** *husband and wife*, **PATRICK B. IORIO**, **PHILOMENA IORIO**, *husband and wife*, **JEFFREY IORIO**, **DIANE IORIO** *husband and wife*, *and* **EDITH TOMEI**, Defendants. | ) ) ) ) ) ) ) ) ) ) ) |

## MEMORANDUM OPINION

The following motions are pending before the Court: the MOTION FOR SUMMARY

JUDGMENT PURSUANT TO FED. R. CIV. P. 56 (ECF No. 25) filed by Defendants Walter G.

Fox (deceased), Rosemary Fox, Patrick B. Iorio, Philomena Iorio, Jeffrey Iorio, Diane Iorio, and

Edith Tomei (the "Policyholders"), with a brief and concise statement of material facts

("CSMF") in support; and PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT (ECF No.

27) filed by Nationwide Property and Casualty Insurance Company and Nationwide Mutual Fire

Insurance Company ("Nationwide"), with a brief and CSMF in support. Nationwide and the

Policyholders have filed responses in opposition to each other's motions (ECF No. 34, 38).

Randy Shearer and Erin Shearer[1] (the "Shearers") have filed a response to Nationwide's motion

(ECF No. 36). Nationwide has filed a reply brief (ECF No. 40). Accordingly, the motions are

ripe for disposition.

---

1. The Court notes that the Shearers are nominal Defendants in this action, named only because they are the plaintiffs in the underlying litigation. As such, there are no claims actually pending against them.

## I.    Background

This case involves an insurance coverage dispute. The Policyholders have homeowner insurance policies with Nationwide, which contain identical policy language. Nationwide brings an action under Fed. R. Civ. P. 57 and the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, seeking to have this Court declare that it does not have a duty to defend or indemnify the Policyholders for claims asserted against them by the Shearers in a civil action now pending in the Court of Common Pleas of Lawrence County, Pennsylvania, at its docket number 2011-10057, captioned *Shearer, et al. v. Seamans, et al.* (the "underlying litigation").

The Shearers initiated the underlying litigation on January 13, 2011, naming the Policyholders and 51 other nearby property owners as defendants. They have since amended their complaint three times, most recently on December 12, 2013. The factual allegations, however, have apparently remained largely the same throughout the course of the underlying litigation. In their complaint, the Shearers allege that they purchased approximately 18 acres of undeveloped land (the "property") in 2006 and built their home on it. Pl.'s CSMF ¶ 27, ECF No. 29. The Shearers intended to subdivide the remainder of the property and construct five additional homes, which they would then sell. *Id.* ¶ 28. In 2009, the Shearers allegedly discovered that multiple sewer pipes were "discharging raw sewage, effluent and wastewater" on their property which had drained from several neighboring properties, including, but not limited to, the properties owned by the Policyholders. *Id.* ¶ 29. The Shearers allege that the Policyholders or their predecessors in interest "installed, put into service and utilized multiple sewer pipes to discharge their sewage on the surface of the [property]." *Id.* ¶ 30. The Shearers also allege that they capped the ends of the sewer pipes sometime in late 2009, only to later discover that someone had cut off the caps, thereby allowing the discharge of "raw sewage,

effluent and wastewater" to continue. *Id.* ¶ 31. Furthermore, according the Shearers' complaint, "raw sewage, effluent and wastewater continues to be discharged upon the [property] and absorbed into the groundwater and contaminating the same." *Id.* ¶ 32. The discharge has been absorbed into the ground and allegedly contaminated the groundwater and likely has impacted the well water of those down grade from the property. *Id.* ¶ 33.

The Shearers assert several legal theories in their complaint: trespass, continuing trespass, civil conspiracy to trespass, private nuisance, absolute nuisance, creation or maintenance of a dangerous condition, violation of the Pennsylvania Clean Streams Law, negligence, and public nuisance. *Id.* ¶ 36. They seek to recover damages for: deprivation of their use and quiet enjoyment of portions of the property due to unsightly conditions and noxious aromas; inability to subdivide and develop the property into multiple home sites; lost profits from the inability to subdivide and develop the property; reduction of market value of the property; personal health problems such as nausea, depression, and inability to sleep; and permeation of the drywall of their residence of an objectionable odor and fecal matter and sewage effluent. *Id.* ¶ 35.

Nationwide has been defending each of its Policyholders since the inception of the underlying litigation, subject to a reservation of rights.[2] The reservation of rights letters sent to the Policyholders stated that Nationwide would investigate the circumstances surrounding the Shearers' claims to determine whether they were covered by the terms of the policies. The

_____

2.      Nationwide accepted the tender of defense from Patrick and Philomena Iorio, subject to a reservation of rights letter dated March 9, 2011; it accepted the tender of defense from Jeffrey and Diane Iorio, subject to a reservation of rights letter dated March 9, 2011; and it accepted the tender of defense from Walter (deceased) and Rosemary Fox, subject to a reservation of rights letter dated March 7, 2011. Edith Tomei was not named as a defendant in the underlying litigation until the Shearers filed their third amended complaint in December 2013. Before that date, however, Nationwide sent a reservation of rights letter to Ms. Tomei, dated April 16, 2013, in anticipation of her being named as a defendant. It followed up with a supplemental reservation of rights letter dated January 9, 2014, after she had actually been added to the underlying litigation.

reservation of rights letter noted, however, that "this investigation [would be] subject to a **Reservation of Rights**, meaning that [Nationwide] specifically reserves the right to later deny coverage on [the] claim at the conclusion of its investigation." Ex. 14 at 1, ECF No. 30 (emphasis in original). In particular, Nationwide informed the Policyholders that the Shearers' claims might fall within the pollution exclusion and/or biological deterioration or damage exclusion, inasmuch as they stemmed from "raw sewage and/or waste products being discharged on or near the [Shearers'] property." *Id.* at 3. At the conclusion of the reservation of rights letters, Nationwide stated:

> Nationwide will continue to investigate this claim to determine whether the above quoted provisions from your insurance policy preclude coverage for your claim. Once Nationwide has completed its investigation into the circumstances of your claim, we will notify you in writing of our coverage decision.
>
> Please be advised that Nationwide's willingness to investigate this claim does not constitute a waiver of any rights under the policy. The reasons identified in this **Reservation of Rights Letter** regarding coverage are not necessarily exhaustive and do not preclude Nationwide from asserting any other valid reason for later denying or reserving coverage. Any action taken to date by Nationwide, its agents, employees or other representatives shall not be deemed to be a waiver of or estoppel of these and all rights under the policy and applicable law.

*Id.* (emphasis in original)

Nationwide also sent each of the Policyholders a supplemental reservation of rights letter.[3] In this letter, Nationwide explained that it would "continue to handle this matter pursuant to a reservation of rights . . . . because there are certain exceptions to coverage that may apply." *Id.* at 4. Nationwide went on to state that it would

> investigate this matter to determine if coverage will apply. You should be aware that as the facts are determined, [Nationwide] may assert the right to deny coverage and withdraw from the handling of this claim for any valid reasons that

---

3.  The supplemental letter to Patrick and Philomena Iorio is dated April 6, 2011. The supplemental letter to Jeffrey and Diane Iorio is dated April 7, 2011. The supplemental letter to the Foxes is dated April 11, 2011.

may arise. You should also be aware that even if this case proceeds to trial, we may not be obligated to pay any judgment nor any portion of any judgment that may fall outside the coverage afforded by the policy.

*Id.* at 4-5. After summarizing the Shearers' allegation, Nationwide reiterated its position that the claims might fall within the pollution and/or biological deterioration or damage exclusions. *Id.* at 6. Finally, Nationwide concluded the letter by stating that "[b]y investigating, participating in your defense or negotiating settlement, we do not assume any liability in excess of that imposed by the policy, and we do not waive any of our rights to rely upon any of the provisions of the policy and do not admit that the policy provides coverage for the alleged damages." *Id.* at 9.

## II.     Discussion

### A.     Jurisdiction under the Declaratory Judgment Act

Before addressing the parties' motions, the Court must address whether it should exercise jurisdiction over this action under the DJA.[4] The DJA provides, in pertinent part, that "any court of the United States . . . *may* declare the rights and other legal relations of any interested party." 28 U.S.C. § 2201 (emphasis added). The exercise of jurisdiction under the DJA is, therefore, entirely discretionary. *See Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 139 (3d Cir. 2014) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995)). "[D]istrict courts are authorized, 'in the sound exercise of [their] discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close.'" *Id.* (quoting *Wilton*, 515 U.S. at 288). While the "exercise of discretion must be 'sound,'" the scope of the district court's discretion has been framed in "broad terms." *Id.* (citing *Wilton*, 515 U.S. at 287). "Rather than being subject to the 'normal principle that federal courts should adjudicate claims within their

---

4.      Although the parties have not addressed whether this Court should exercise jurisdiction under the DJA, this issue may be raised by the Court *sua sponte*. *State Auto Ins. Cos. v. Summy*, 234 F.3d 131, 136 (3d Cir. 2000).

jurisdiction,' district courts exercising DJA discretion are governed by 'considerations of practicality and wise judicial administration.'" *Id.* (quoting *Wilton*, 515 U.S. at 288).

In *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942), the Supreme Court set forth several factors a district court should consider before entertaining a declaratory judgment action whenever there is "another proceeding . . . pending in a state court in which all the matters in controversy between the parties could be fully adjudicated." *Id.* at 495. "Ordinarily," the Supreme Court explained, "it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Id.* "Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided." Thus, before exercising jurisdiction whenever there is a pending state-court proceeding involving the same matters, the district court must consider a non-exhaustive list of factors, such as the scope of the state court proceeding and "whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, whether such parties are amenable to process in that proceeding, etc." *Id.*

Fifty years later, in *Wilton*, the Supreme Court addressed "virtually identical" circumstances and reaffirmed "the *Brillhart* regime," again holding that district courts "have substantial latitude in deciding whether to stay or to dismiss a declaratory judgment suit in light of pending state proceedings." *Wilton*, 515 U.S. at 286. The *Wilton* Court specifically narrowed its holding to situations in which there is a parallel state proceeding, however, noting that it was not attempting to "delineate the outer boundaries of that discretion in other cases, for example, cases raising issues of federal law or cases in which *there are no parallel state proceedings*." *Id.* at 290 (emphasis added).

Although the Court of Appeals for the Third Circuit has acknowledged that the DJA gives district courts broad discretion, it has also warned that the exercise of that discretion must be "reasoned." *Bituminous Coal Operators' Assoc. v. Int'l Union*, *United Mine Workers of Am.*, 585 F.2d 586, 596 (3d Cir. 1978). District courts must, therefore, address a multitude of factors when exercising their DJA discretion. *Id.* There are a number of general factors that must be considered, such as whether a declaration "will resolve the uncertainty of obligation which gave rise to the controversy; the convenience of the parties; the public interest in settlement of the uncertainty of obligation; and the availability and relative convenience of other remedies." *United States v. Pa., Dep't of Envtl. Res.*, 923 F.2d 1071, 1075 (3d Cir. 1991) (internal citations omitted). The Court of Appeals has also identified several additional factors that are relevant only in the insurance context:

> "(1) A general policy of restraint when the same issues are pending in a state court;
>
> (2) An inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion;
>
> (3) Avoidance of duplicative litigation."

*Summy*, 234 F.3d at 134 (quoting *Pa., Dep't of Envtl. Res.*, 923 F.2d at 1075).

Until recently, the Third Circuit Court of Appeals had not addressed the scope of DJA discretion in the absence of parallel state proceedings – a question left open by the Supreme Court in *Wilton*. The Court of Appeals answered that question in *Reifer*, however, by joining a long list of other courts in holding that the "the existence or non-existence of pending parallel state proceedings is but one factor for a district court to consider" in determining whether to exercise jurisdiction under the DJA. *Id.* Nevertheless, while the existence or non-existence of parallel state proceedings is not dispositive, it is worthy of "increased emphasis." *Id.* (citations

omitted). As the Court of Appeals explained,

> the absence of pending parallel state proceedings militates significantly in favor of exercising jurisdiction, although it alone does not require such an exercise. In this circumstance, as part of exercising sound and reasoned discretion, district courts declining jurisdiction should be rigorous in ensuring themselves that the lack of pending parallel state proceedings is outweighed by opposing factors. This same rationale applies when state proceedings do exist. The existence of pending parallel state proceedings militates significantly in favor of declining jurisdiction, although it alone does not require doing so. In this circumstance, as part of exercising sound and reasoned discretion, district courts exercising jurisdiction should be rigorous in ensuring themselves that the existence of pending parallel state proceedings is outweighed by opposing factors.

*Reifer*, 751 F.3d at 144-45.

The Court of Appeals made several additional observations in *Reifer* that are relevant in this case. In particular, the Court of Appeals opined that "[t]he insurance coverage context has been particularly fertile ground for exercising – and testing the boundaries of – DJA discretion, especially since [the] decision in *Summy*." *Id.* (citations omitted). At one time – in fact, fairly recently – "the trend of many District Courts in Pennsylvania" was "to decline to exercise jurisdiction over declaratory judgment actions, involving an insurance company, that are solely brought on diversity, and have no federal question or interest." *Reifer v. Westport Ins. Corp.*, 943 F. Supp. 2d 506, 508 (M.D. Pa. 2013), *aff'd*, 751 F.3d 129 (internal citations omitted). This was true even in the absence of parallel state proceedings. *See, e.g.*, *id.*; *Phoenix Ins. Co. v. Kellner*, No. CIV. 11-1085, 2012 WL 266470, at *3 (W.D. Pa. Jan. 30, 2012). Support for this so-called "trend" was seemingly found in the frequently quoted line from *Summy* that "[t]he desire of insurance companies and their insureds to receive declarations in federal court on matters of purely state law has no special call on the federal forum." 234 F.3d at 136.

The Court of Appeals called this "trend" into question, finding it "problematic for two reasons." 751 F.3d at 147. "First," the Court of Appeals explained, "there is nothing to

distinguish these cases from any other declaratory judgment action that invokes diversity jurisdiction and asks federal courts to declare the rights of parties under settled state law." *Id.* "Second, these cases implicate neither an improper use of procedure by insurance companies nor unfairness to insureds." *Id.* The Court of Appeals acknowledged the "district courts' apparent frustration over the volume" of declaratory judgment actions brought by insurance companies, but made clear that there is "'no authority for the proposition that an insurer is barred from invoking diversity jurisdiction to bring a declaratory judgment action against an insured on an issue of coverage.'" *Id.* (quoting *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998)). Thus, the Court of Appeals "reject[ed] any reading of *Summy* that supports per se automatic declining of jurisdiction in every" case involving an insurance coverage dispute arising under state law. *Id.* The Court of Appeals also cautioned that its remarks in *Summy* – "that such cases have 'no special call on the federal forum and that even less reason for federal jurisdiction exists when state law is 'firmly established'" – were dicta, inasmuch as "*Summy*'s holding specifically turned on considerations relevant to the pending state court suit." *Id.* at 147 (quoting *Summy*, 234 F.3d at 135-36). Rather than dismissing such actions by rote recitation of the *Summy* factors, the Court of Appeals emphasized that district courts must carefully analyze the factors set forth above – starting with the existence or non-existence of parallel state proceedings – before exercising or declining to exercise jurisdiction. *Id.*

The threshold question, then, is whether there is a pending parallel state proceeding, such that there is a presumption against the exercise of DJA discretion. The *Brillhart* Court described a pending "parallel" proceeding as one "presenting the same issues, not governed by federal law, between the same parties." *Brillhart*, 316 U.S. at 495. The pending state court proceeding must, in other words, permit "all the matters in controversy between the parties" to "be fully

adjudicated." *Id.* In this case, while there is litigation pending in state court, it is not a parallel proceeding. First, Nationwide is not a party to the underlying litigation. Second, the issues of whether Nationwide has a duty to defend or indemnify the Policyholders have not been raised in the underlying litigation. Nor, would it seem, could these issues "be fully adjudicated" in the underlying litigation. The only way these issues could be raised in state court is if Nationwide files a declaratory judgment action – but that would be a new, separate action, not one that is currently pending. Alternatively, Nationwide could wait until the issue of liability is resolved in the underlying litigation and then raise its policy defenses in a garnishment proceeding brought by the Shearers to collect on their judgment. By then, however, the duty to defend issue would be moot: Nationwide would have defended the underlying litigation until its resolution. The only question left would be whether Nationwide has a duty to indemnify the Policyholders on the Shearers' claims. Moreover, while the garnishment proceeding would be an outgrowth of the underlying litigation, such proceeding cannot be said to be "pending" at this time insofar as it has not yet been initiated. The Court, thus, finds that the two actions – the underlying litigation and this action – are related but not necessarily "parallel" as that term is defined in this context.

The absence of pending parallel state proceedings in this case "militates significantly in favor of exercising jurisdiction." *Reifer*, 751 F.3d at 144. None of the other factors identified in *Reifer* are strong enough to overcome this presumption. Most importantly, the parties have been litigating this matter in this Court for approximately nine months. They have both filed motions for summary judgment, along with extensive briefing. So, while Nationwide does have other remedies at its disposal – namely, litigating the coverages issues in state court – and while this case does turn solely on questions of Pennsylvania law, it would not be a wise use of the parties' or this Court's time and resources to dismiss this case at this stage of the proceedings. *Cf. id.* at

149 n.25 (noting that "the time of the District Court's remand raises judicial efficiency concerns"). In view of this, the Court will exercise jurisdiction under the DJA and turn to the substance of the parties' motions for summary judgment.

**B.      The Policyholders' Motion**

Relying on a quote from the advisory committee's notes to Fed. R. Civ. P. 57, the Policyholders argue that this Court lacks subject-matter jurisdiction over this action because Nationwide failed to name all "adversely affected" parties – namely, the 51 other defendants in the underlying litigation – as defendants, which, according to the Policyholders, is required by Rule 57. This argument rests on the Policyholders' apparent assumption that Rule 57 establishes a special rule for compulsory joinder of parties in declaratory judgment actions, different from that which applies in other civil actions, and that failure to comply somehow strips the Court of subject-matter jurisdiction (though the Policyholders never quite explain why that is so). This assumption is misguided. There is no authority for treating a declaratory judgment action differently from any other action when it comes to the rules of compulsory joinder. Rather, the standard set forth in Rule 19 is "fully applicable" in this context.[5] *See* 10B Charles Alan Wright & Arthur Miller, Fed. Prac. & Proc. Civ. § 2768 (3d ed. 2004). Accordingly, the Court will judge

---

5.      Relatedly, the Court notes that although the Policyholders have styled their filing a "motion for summary judgment," their argument would have been more appropriately raised "'by way of Rule 12(b)(7) of the Federal Rules of Civil Procedure, rather than Rule 56[.]'"[5] *Fiscus v. Combus Fin. AG*, No. CIV.A. 03-1328(JBS), 2007 WL 4164388, at *4 (D.N.J. Nov. 20, 2007) (quoting *Marten v. Godwin*, 499 F.3d 290, 295 n. 2 (3d Cir. 2007)) (internal brackets omitted). That is because a ruling on summary judgment is considered on the merits, while a ruling on a Rule 12(b)(7) motion results in a dismissal without prejudice. *See* 7 Charles Alan Wright & Arthur Miller, Fed. Prac. & Proc. Civ. § 1609 (3d ed. 2004). The Court will, therefore, treat the Policyholders' motion as one for dismissal rather than one for summary judgment. *See Ricci v. State Bd. of Law Examiners*, 569 F.2d 782, 784 (3d Cir. 1978) (concluding that "the district court could not grant summary judgment on" the ground that the plaintiff failed to join an indispensable party, though "it could have entered an order dismissing the complaint under F. R. Civ. P. 12(b)").

the Policyholders' motion with reference to the standard set forth in Rule 19.

Rule 19 establishes a two-part framework for determining whether joinder of a party is compulsory. First, the Court must decide whether the party is considered necessary under Rule 19(a). If so, the party must be joined. If, however, joinder is not feasible (because, for example, joinder would undermine the Court's diversity jurisdiction), the Court must go on to determine whether the party is indispensable to the action, upon consideration of the factors in Rule 19(b). Only at this stage does subject-matter jurisdiction become an issue, for a "finding of indispensability under Rule 19(b) necessitates dismissal for lack of subject-matter jurisdiction."[6] *Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 319 (3d Cir. 2007).

There are two categories of necessary parties under Rule 19. The Court finds that the 51 other defendants in the underlying litigation do not fall within either category.

First, under Rule 19(a)(1)(A), a party must be joined if the Court could not "accord complete relief among existing parties" without that party. In this case, however, Nationwide seeks a judicial declaration regarding the scope of the Policyholders' coverage. There are no allegations against the 51 other defendants in the underlying litigation. As a consequence, Nationwide and the Policyholders are the only parties necessary to resolving this dispute. The other defendants, by contrast, "bear[] no legal relationship to the insurance policy and complete relief can be granted in [their] absence." *Nat'l Cas. Co. v. Young*, No. CIV.A. 07-CV-04836, 2008 WL 4414719, at *1 (E.D. Pa. Sept. 23, 2008).

Second, under Rule 19(a)(1)(B), a party must be joined if he or she has "an interest

---

6. The Policyholders have failed to attempt to explain why Nationwide's decision not to join allegedly necessary parties undermines this Court's subject-matter jurisdiction. In particular, they have not provided the Court with any information about the state of citizenship of the Policyholders. Thus, the Court would be unable to determine whether their joinder would be feasible. Ultimately, however, this issue is moot because none of the 51 other defendants in the underlying litigation are necessary parties under Rule 19(a).

related to the subject of the action" and "disposing of the action" without the party would "impair or impede the person's ability to protect the interest" or "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." The term "interest," in this context, means "a legally protected interest, and not merely a financial interest, in the action." *Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216, 230 (3d Cir. 2005) (internal citation and quotation marks omitted). None of the 51 other individuals named in the underlying litigation have any such interest in this case. While the Policyholders argue that some of these defendants, such as Diane and Thomas Capitola, have insurance policies that might contain policy exclusions similar to those involved in this action, that does not mean that they have a legally protectable interest in this case. As Nationwide aptly observes, "any determination of coverage by this Court would be limited to the Nationwide policies at issue[.]" Pl.'s Br. at 11, ECF No. 37. It would have absolutely no effect on the rights or interests of the other defendants in the underlying litigation, even though some of them might have insurance policies containing exclusions similar to those at issue here.

In sum, the 51 other defendants named in the underlying litigation were not required to be joined under Rule 19. Therefore, the Policyholders' motion will be denied.

### C. Nationwide's Motion

Nationwide argues that the Shearers' claims in the underlying litigation fall within the pollution liability exclusion and/or the biological deterioration or damage exclusion contained in each of the policies. Accordingly, Nationwide asks this Court to declare that it does not have a duty to defend or indemnify the Policyholders in the underlying litigation. The Policyholders do not challenge – or address in any manner – Nationwide's position as to whether the Shearers' claims are within the aforementioned policy exclusions. Instead, they argue that Nationwide

should be estopped from denying coverage because it has been defending them in the underlying litigation for more than three years and they would be prejudiced if Nationwide were allowed to withdraw because they would have to obtain new counsel at a late stage in the proceedings.

To establish estoppel in the insurance context, "there must be such conduct on the part of the insurer as would, if the insurer were not estopped, operate as a fraud on some party who has taken or neglected to take some action to his own prejudice in reliance thereon." *Titan Indem. Co. v. Cameron*, No. CIV.A. 01-5435, 2002 WL 242346, at *2 (E.D. Pa. Feb. 19, 2002) (quoting *Wasilko v. Home Mut. Cas. Co.*, 232 A.2d 60, 63 (Pa. Super. Ct. 1967)). Therefore, the Policyholders must show (1) "an inducement . . . that causes one to believe the existence of certain facts," (2) "justifiable reliance on that inducement," and (3) "prejudice." *TIG Ins. Co. v. Tyco Int'l Ltd.*, 919 F. Supp. 2d 439, 457 (M.D. Pa. 2013) (citing *Chem. Bank v. Dippolito*, 897 F. Supp. 221, 224 (E.D. Pa. 1995)). Each of these elements must be established "by 'clear, precise and unequivocal evidence.'" *Id.* (quoting *Rock–Epstein v. Allstate Ins. Co.*, No. 07-2917, 2008 WL 4425059, at *4 (E.D. Pa. 1998)).

In this case, it is undisputed that each of the Policyholders received a timely reservation of rights letter, followed by a supplemental letter, setting forth Nationwide's position as to coverage and stating, *inter alia*, that Nationwide's actions in assuming the defense of the Policyholders subject to a reservation of rights "shall not be deemed to be a waiver of or estoppel of these and all rights under the policy and applicable law." This completely undercuts the Policyholders' estoppel argument. As the Pennsylvania Superior Court has made clear, "'an insurer *will not be estopped* to'" deny coverage, "'notwithstanding the insurer's participation in the defense of an action against the insured, if the insurer gives timely notice to the insured that it has not waived the benefit of its defense under the policy.'" *Brugnoli v. Un. Nat'l Ins. Co.*, 426

A.2d 164, 167 (1981) (emphasis added) (quoting 14 G. Couch, Cyclopedia of Insurance Law § 51:83 (2d ed. 1965)). Typically, this "timely notice" comes by way of a reservation of rights letter. *See, e.g.*, *Whole Enchilada, Inc. v. Travelers Prop. Cas. Co. of Am.*, 581 F. Supp. 2d 677, 686 n.6 (W.D. Pa. 2008) ("A reservation of rights is unilateral, written notice from the insurer to the policyholder that the insurer may disclaim coverage for one or more claims in issue based on terms of the insurance policy, legal principles precluding coverage, violation of policy provisions by the insured, or some combination of these factors.") (internal citation and quotation omitted). Accordingly, because Pennsylvania law expressly gives insurers like Nationwide the "the option of defending subject to a reservation of its right later or simultaneously to contest coverage," it appears that Nationwide cannot be estopped from asserting its coverage defenses in this action. *Babcock & Wilcox Co. v. Am. Nuclear Insurers*, 76 A.3d 1, 12 (Pa. Super. Ct. 2013).

Notwithstanding Nationwide's timely reservation of its rights,[7] the Policyholders argue that Nationwide should still be estopped from denying coverage because, essentially, Nationwide waited too long to bring this action. The Policyholders have not cited any authority from Pennsylvania or elsewhere supporting their assertion that an insurer is required to disclaim coverage and/or file a declaratory judgment action within a certain period of time after issuing a reservation of rights letter. Nor has the Court's own research uncovered any support for the Policyholder's position. In fact, a few courts have addressed similar arguments and reached the opposite conclusion from the one espoused by the Policyholders.

For example, in *Argonaut Great Central Insurance Co. v. Phil's Tavern, Inc.*, No. CIV.

---

7. The Court recognizes that "an insurer's delay in issuing a reservation of rights letter may, under certain circumstances, support a claim for bad faith or estoppel." *Greenwich Ins. Co. v. BBU Servs., Inc.*, No. CIV.A. 12-291, 2013 WL 2430787, at *1 (W.D. Pa. June 4, 2013) (citations omitted). Here, though, there is no question that the reservation of rights letters were timely. The issue is whether there was a time frame within which Nationwide was required to deny coverage following the issuance of the reservation of rights letter.

A. 01-CV-2191, 2001 WL 1346327 (E.D. Pa. Oct. 29, 2001), a discrimination complaint was brought against the insured, Phil's Tavern, by a former employee, first at the administrative level and eventually in state court. *Id.* at *1. After the suit was filed, the insurer, Argonaut, filed a declaratory judgment action in the Eastern District, claiming that the former employee's claims fell within a policy exclusion and, thus, it had no duty to defend or indemnify Phil's Tavern. *Id.* In response, Phil's Tavern argued that the insurer either waived its right to disclaim coverage or was estopped from disclaiming coverage because the insured "relied on [the insurer's] assumption of their defense and [would] be prejudiced if forced to change counsel." *Id.* at *2. The court rejected both arguments, however. *Id.* at *3-5.

Analyzing the elements of estoppel, the district court first found that Phil's Tavern was not the victim of an inducement because, following the filing of the administrative complaint in the underlying employment discrimination action, Phil's Tavern was "timely informed of [the insurer's] position" via a reservation of rights letter. *Id.* at *5. Second, the district court found that "in light of this correspondence, Phil's Tavern and [its manager] could not have reasonably relied upon any act or failure to act . . . to conclude that [the insurer] had accepted coverage or would defend the underlying action (other than doing so while investigating [the underlying claims] or as a gratuity pending the adjudication of this declaratory judgment action." *Id.* Finally, with respect to the third element, the district court rejected Phil's Tavern's argument that it would be prejudiced "if required to switch counsel 'after this matter has been pending (both at the agency level and in the court) for approximately two years.'" *Id.* As the court reasoned, this bald assertion was insufficient to establish actual prejudice. *Id.* In particular, the court noted, "Phil's Tavern and [its manager] do not state why they would necessarily be required to switch counsel as a result of their assuming their own defense, or explain why such a switch would

necessarily be prejudicial." *Id.*

Faced with a similar scenario, the District Court for the Central District of Illinois fairly recently held that, under Illinois law, an insurer was not estopped from denying coverage, even though it defended subject to a reservation of rights for three years before filing a declaratory judgment action. *Secura Ins. Co. v. Plumb*, No. 413CV04054SLDJEH, 2014 WL 4417356, at *5 (C.D. Ill. Sept. 8, 2014). Just like the Policyholders here, the insured in that case failed to cite any "authority requiring that an insurer fulfilling its obligation to defend file its declaratory action within any specified period." *Id.* Thus, the court explained, since the insurer "satisfied the general rule by undertaking to defend Superior under a reservation of rights," there was no basis to estop the insurer from denying coverage. *Id.*

Likewise, in *Aetna Casualty & Surety Company v. Kassab*, No. 194208, 1997 WL 33344233, at *2 (Mich. Ct. App. Aug. 19, 1997), a Michigan appellate court concluded that an insurer is not estopped from denying coverage despite an eight-month gap between issuing its reservation of rights letter and filing a declaratory judgment action. As the court noted, the "defendants were not prejudiced by the timing of the declaratory judgment action because plaintiff provided independent counsel for the defense of the underlying action and gave clear notice to the insured of its reservation of rights to deny coverage at a later date." *Id.*

The District Court for the Southern District of Mississippi reached that same result when faced with an analogous situation in *Employers Reinsurance Corp. v. Martin, Gordon, & Jones*, 767 F. Supp. 1355, 1363-64 (S.D. Miss. 1991). Although the court recognized "that, as a general proposition, an insurer who has undertaken to defend a case for its insured may withdraw from the litigation only if it can do so without prejudicing its insured," the court found that there was no evidence of prejudice and thus no basis to find estoppel. *Id.* (internal citation omitted). More

specifically, the court explained, the defendants knew that the insurer was defending under a reservation of rights, and "even though [they] refused to expressly agree to the reservation of rights, they impliedly accepted the terms of [the insurer's] representation by turning the summons and complaint over to [the insurers'] counsel when the [] lawsuit was subsequently filed." *Id.* The court continued by observing that the record was devoid of "evidence to suggest that Defendants ever requested permission to select their own counsel to handle the [] suit or otherwise challenged the counsel that [the insurer] had selected to represent them." *Id.* Likewise, the court found that the insured parties failed to establish any evidence that they would suffer prejudice in the future if the insurer was permitted to withdraw from their defense. *Id.*

On a similar note, in *Hartford Fire Insurance Co. v. Gandy Dancer, LLC*, the insured argued that the insurer was barred from seeking a declaratory judgment under the equitable doctrine of laches because the insured waited "two and a half years after accepting coverage" to file suit. No. CIV 10-0137 JB/RHS, 2011 WL 1336523, at *20 n.6 (D.N.M. Mar. 30, 2011). The district court disagreed, however, finding laches inapplicable because the insured was defending under a reservation of rights and the insured suffered no prejudice. *Id.* "Indeed," as the court observed, "the delay has helped [the insured parties] – not prejudiced them – by having [the insurer] pay for their defense." *Id.*

These cases suggest that as long as a reservation of rights letter is issued, estoppel will not lie. At least one court has, however, expressly rejected the notion that estoppel can never be found whenever there has been a reservation of rights letter issued. *See Willis Corroon Corp. v. Home Ins. Co.*, 203 F.3d 449, 452 (7th Cir. 2000) (applying Illinois law). In *Willis Corroon*, the Seventh Circuit found it "inconceivable" that, under Illinois law, a reservation of rights would "give an insurer license to prejudice its insured however it wanted." *Id. Willis* involved

circumstances far different from those here, though. The insurer in that case undertook a defense under a reservation of rights. *Id.* at 450. After doing so, though, the insurer refused to give the attorney it had hired settlement authority and refused to pay expert fees requested by the attorney. *Id.* at 451. Making matters worse, the defense attorney hired by the insurer missed a filing deadline, causing the insurer to allege that he had committed malpractice. *Id.* Faced with those allegations, the court allowed the attorney hired by the insurer to withdraw from the insured's defense. *Id.* Thereafter, the insurer failed to obtain alternate representation for the insured and "[w]ith everything in disarray, the case was settled . . . ." *Id.* In the meantime, after the insured's attorney moved to withdraw, the insurer filed a declaratory judgment action, seeking a declaration that it had no duty to indemnify. *Id.* The Seventh Circuit rejected that argument, finding that the insured was estopped from denying coverage. *Id.* As the court noted, the insurer "mishandled a defense which it undertook under a reservation of rights . . . creat[ing] a situation in which its insured . . . was left in the lurch." *Id.* at 453. Allowing the insurer to withdraw from the case under those circumstances would be allowing a blatant manipulation of the law," the court reasoned. *Id.* "It would encourage the worst possible behavior. [The insurer] failed to provide an adequate defense, in fact completely undermined the defense which it ostensibly provided," and thus, the court concluded that "the company cannot be saved by a twelfth-hour filing of a declaratory judgment action." *Id.*

If a unifying principle can be divined from these cases, it is that the issuance of a timely reservation of rights letter will be a lofty hurdle for an insured party to overcome in asserting an estoppel defense, even though it may not be absolutely fatal. Assuming, however, that estoppel may still lie despite a timely reservation of rights, the touchstone remains actual prejudice. That is, the insured party must introduce evidence that it would be actually prejudiced by the insurer's

delay in disclaiming coverage. "[U]nsupported assertions, conclusory allegations, or mere suspicions" are not enough. *Phil's Tavern*, 2001 WL 1346327, at *5 (internal citation and quotation marks omitted).

This Court finds that, in this case, there is no basis to estop Nationwide from asserting its coverage defenses. To be sure, the Policyholders argument has a certain emotional appeal to it. Nationwide knew that the Shearers' claims likely fell within one or more of the policy exclusions soon after the Policyholders tendered a defense, and the nature of claims apparently has not changed since the underlying litigation began. Thus, it is unclear why it took so long for Nationwide to investigate the claims and come to a final position as to coverage, as it said it was doing in the reservation of rights letters. All it had to do was look at the face of the Shearers' complaint to arrive at that conclusion. Be that as it may, the Policyholders have not adduced "clear, precise and unequivocal evidence" that they changed their positions in reliance on Nationwide's conduct or suffered any prejudice therefrom. There are no allegations, let alone evidence, of prejudice along the lines of that which the Seventh Circuit found sufficient in the *Willis Corroon* case. As noted, the Policyholders only argument on this issue seems to be that they will be prejudiced by having to retain new counsel in the underlying litigation. Just as in *Phil's Tavern*, however, the Policyholders have not offered any explanation or evidence as to "why they would necessarily be required to switch counsel as a result of their assuming their own defense, or explain why such a switch would necessarily be prejudicial." *Id.* Presumably, they could hire the same attorney who has been representing them, at Nationwide's behest, since the start of the underlying litigation. *See* 1 A.D. Windt, Insurance Claims and Disputes § 4:30 (6th ed.). "While the [Policyholders] might, because of a lack of financial resources, be unable adequately to continue the defense, that presumably would have been true regardless of whether

[Nationwide] had withdrawn earlier or had not defended at all." *Id.* Nationwide's "defense would not, therefore, have given rise to any detrimental reliance by the [Policyholders]." *Id.*

Absent a showing of actual prejudice, the Policyholders cannot demonstrate that Nationwide should be estopped from denying coverage. Moreover, since the Policyholders have not challenged Nationwide's position as to the issue of coverage, the Court agrees with Nationwide that it does not have a duty to defend or indemnify the Policyholders in the underlying litigation. Therefore, the Court will grant Nationwide's motion for summary judgment and issue a declaratory judgment in the manner so requested by Nationwide.

## IV.    Conclusion

For the foregoing reasons, the Policyholders' motion will be denied, and Nationwide's motion will be granted. An appropriate order follows.

McVerry, S.J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

NATIONWIDE PROPERTY AND CASUALTY
INSURANCE COMPANY and NATIONWIDE
MUTUAL FIRE INSURANCE COMPANY,
      Plaintiffs,

      v.

RANDY SHEARER, ERIN SHEARER,
*husband and wife*, WALTER G. FOX
*(deceased)*, ROSEMARY FOX
*husband and wife,* PATRICK B. IORIO,
PHILOMENA IORIO, *husband and wife*,
JEFFREY IORIO, DIANE IORIO *husband and
wife, and* EDITH TOMEI,
      Defendants.

)
)
)
)
)  **2:14-cv-735**
)
)
)
)
)
)
)
)
)
)
)
)

## ORDER OF COURT

**AND NOW**, this 13th day of March, 2015, in accordance with the foregoing

Memorandum Opinion, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the

MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56 (ECF No. 25)

filed by Defendants Walter G. Fox (deceased), Rosemary Fox, Patrick B. Iorio, Philomena Iorio,

Jeffrey Iorio, Diane Iorio, and Edith Tomei is **DENIED**, and PLAINTIFFS' MOTION FOR

SUMMARY JUDGMENT (ECF No. 27) filed by Nationwide Property and Casualty Insurance

Company and Nationwide Mutual Fire Insurance Company is **GRANTED**. Consistent with the

foregoing, it is hereby:

**ORDERED** that Nationwide Mutual Fire Insurance Company does not owe any duty to

defend or indemnify Walter Fox (deceased) and Rosemary Fox in the Underlying Litigation

under Nationwide's homeowner policy 54 37 MP 263976, effective January 19, 2006, and each

successive annual renewal period thereafter; and it is further;

**ORDERED** that Nationwide Property and Casualty Insurance Company does not owe

any duty to defend or indemnify Patrick B. Iorio and Philomena Iorio in the Underlying Litigation under Nationwide's homeowner policy 54 37 HO 629465, effective March 21, 2008, and each successive annual renewal period thereafter; and it is further;

**ORDERED** that Nationwide Property and Casualty Insurance Company does not owe any duty to defend or indemnify Jeffrey Iorio and Diane Iorio in the Underlying Litigation under Nationwide's homeowner policy 54 37 HO 594411, effective January 6, 2006, and each successive annual renewal period thereafter; and it is further;

**ORDERED** that Nationwide Property and Casualty Insurance Company does not owe any duty to defend or indemnify Edith Tomei in the Underlying Litigation under Nationwide's homeowner policy 54 37 HO 614437, effective November 14, 2006, and each successive annual renewal period thereafter.

BY THE COURT:

s/Terrence F. McVerry
Senior United States District Judge

cc:     **Michael A. Hamilton, Esquire**
        Email: mhamilton@nldhlaw.com

        **Douglas G. Linn, II, Esquire**
        Email: dlinn@linnlawgroup.com

        **Daniel I. Herman, Esquire**
        Email: geerherm@sgi.net